**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHANNON ROTH,

    Plaintiff,

v.                                          Case No. 15-11972

MATTHEW VIVIANO, Hazel Park Police Officer

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DISMISSING WITHOUT PREJUDICE STATE LAW CLAIMS**

Now before the court is Defendant Officer Matthew Viviano's Motion for Summary Judgment. (Dkt. # 12). The matter is fully briefed, and the court finds that a hearing is unnecessary. *See* E.D. LR 7.1(f)(2). For the reasons discussed below, the court will grant Defendant's Motion.

**I. BACKGROUND**

On November 8, 2013, about 3:00 a.m., Plaintiff Shannon Roth suffered a seizure in her home. (Dkt. # 16, Pg. ID 170). Ralph Roth Jr., Shannon's husband, called 911, and a police officer and ambulance were dispatched to the couple's home. (*Id.*) Although many details of what transpired afterwards are in dispute, the material facts are not. All parties agree, for example, that when Defendant Officer Matthew Viviano of the Hazel Park Police Department arrived at the house, Plaintiff was still convulsing. (Dkt. # 12, Pg. ID 56; Dkt # 16, Pg ID. 170.) As a result, the EMTs were unable to get her out of the room, (Dkt. # 12, Pg. ID 56; Dkt. # 16, Pg. ID 172), so Franklin Saxton, Plaintiff's son, carried her out the front door to the waiting gurney, (*Id.*).

Subsequently, Plaintiff either fell or was dropped twice while being wheeled to the ambulance, (*id.*), following which Defendant handcuffed Plaintiff's wrist to the stretcher, (*id.*). Plaintiff arrived at the hospital without further incident or injury. (Dkt. # 12, Pg. ID 56.) Later she filed the instant action, suing Defendant under 18 U.S.C. § 1983 for excessive force and deprivation of liberty without due process. She also alleges assault and battery under Michigan common law. (Dkt. # 1.)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In evaluating a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial . . . . credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

### III. DISCUSSION

Defendant claims he should be granted summary judgment on the following questions: (1) whether he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim for excessive force; (2) whether his conduct should be analyzed under the Fourth or Fourteenth Amendment; and (3) whether he is entitled to governmental immunity under Michigan law on Plaintiff's assault and battery claims. Each issue will be discussed in turn.

### A. Qualified Immunity

Plaintiff argues that Defendant is liable through 42 U.S.C. § 1983 for a violation of her "clearly established constitutional right under the Fourth Amendment to be secure in her person from unreasonable seizure through excessive force." (Dkt. # 1, Pg. ID 4.) Defendant argues that judgment should be granted on that claim because he is entitled to qualified immunity. (Dkt. # 12, Pg. ID 67.) The court agrees.

Qualified immunity is a question of law to be decided by the court. *Everson v. Leis*, 494 (6th Cir. 2009) (citations omitted). It "involves a two-fold inquiry: First, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . [T]he next, sequential step is to ask whether the right was clearly established.'" *Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007) (quoting *Saucier v. Katz*, 553 U.S. 194, 201 (2001)). Under *Pearson v. Callahan*, a court may address either of these steps first. 555 U.S. 223, 236 (2009).

Plaintiff bears the burden of showing the rights violated were clearly established, but Defendant bears the burden of demonstrating that "the challenged act was objectively reasonable in light of the law existing at the time." *Everson*, 556 F.3d at 494 (citations omitted). As this issue is now before the court on Defendant's Motion for Summary Judgment, all disputed facts must be considered, and all reasonable inferences drawn from such facts, taken in the light most favorable to Plaintiff.

Defendant advances three distinct legal theories in the effort to show that he is entitled to qualified immunity. First, he argues that the Plaintiff was not "seized" within the meaning of the Fourth Amendment because, under Sixth Circuit case law, a person cannot be seized if she is unconscious. (Dkt. # 12, pg. ID 70.) Second, he argues that even if Plaintiff *was* seized, no constitutional violation occurred "because Officer Viviano's conduct was objectively reasonable." (*Id.* at Pg. ID 71 (bold and capitalization omitted).) Third, he argues that at the time of the incident, he was acting as a medical responder not a law enforcement officer, and "the right to be free from unintentional conduct of emergency responders was not clearly established" at the time in question. (*Id.* at Pg. 68 (bold and capitalization omitted).) Each argument will be discussed below.

### 1. Seizure While Unconscious

Defendant argues that "the Sixth Circuit has acknowledged that a plaintiff likely cannot allege a violation of the Fourth Amendment by unlawful seizure if he or she is unconscious at the time of the encounter." (*Id.* at Pg. ID 70.) In *Peete v. Metro. Govt. of Nashville and Davidson Cty.,* the circuit held that paramedics who tied the hands and feet of a plaintiff experiencing a seizure while administering to his medical needs were entitled to qualified immunity in part because the plaintiff was "neither communicative,

nor conscious" at the time. 486 F.3d 217, 222 (6th Cir. 2007). Three years later in *McKenna v. Edgell,* 617 F.3d 432 (6th Cir. 2010)*,* the circuit reaffirmed this rationale, distinguishing that case from *Peete* on grounds that there was sufficient evidence to support a factual finding that the plaintiff was conscious. In neither case, however, did the Sixth Circuit state that unconsciousness alone precludes any Fourth Amendment concern.

Nor is it necessary for the court to make such a determination here. As in *McKenna*, Plaintiff has provided sufficient evidence to support a finding that Plaintiff was conscious at the time of the seizure. For example, in his deposition, Saxton specifically stated that at the time of the incident, his mother "was conscious but unresponsive." (Dkt. # 16-2, Pg. ID 195.) While he admitted that Plaintiff was "unaware of what was going on" he repeatedly insisted that she was not "unconscious" during the night's events. (*Id.*) On the contrary, he testified that when the paramedics attempted to move her "she was freaking out because she did not know who they were . . . and just kept screaming for her father." (*Id.*) Furthermore, Defendant's own police report which he wrote just a few hours after the incident states that he "noticed Shannon to be conscious but not coherent." (Dkt. # 16-4, Pg. ID 205.)

Viewing this evidence in the light most favorable to Plaintiff, the court cannot conclude as a matter of law that Plaintiff, even though without question incoherent and uncommunicative, was also "unconscious" during the alleged seizure.

### 2. Reasonableness

Defendant also argues that "[e]ven if the court found that Plaintiff was conscious during the time of her handcuffing, Officer Viviano's use of the handcuffs is still

objectively reasonable and thus not a constitutional violation." (Dkt. # 12, Pg. ID 72.) The court agrees. A claim for excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 389 (1989). The court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citations omitted). Applying the "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The "objective reasonableness" standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir. 2001).

Defendant claims that "Officer Viviano's act of handcuffing one of Plaintiff's wrists was objectively reasonable because Plaintiff posed an immediate threat to others and herself." (Dkt. # 12, Pg. ID 72.) He points to undisputed evidence that Plaintiff resisted "each person who attempted to assist her to the stretcher including her son," along with his own testimony suggesting that Plaintiff "kicked one paramedic in the groin and spit on the other." (*Id.*) He also claims that "Plaintiff fell off the stretcher twice because she was resisting"—prompting Defendant to finally handcuff her to the gurney. (*Id.* at Pg. ID 73.)

Plaintiff has not proffered any evidence which creates a genuine issue of material fact on the matter. Instead, she points to her son's sworn affidavit, where Saxton

6

declared that he was with his mother during the entirety of the night in question, and that "[a]t no time did [he] see [his] mother kick an EMT in the groin" or "see [his] mother spit on an EMT." (Dkt. # 16-3, Pg. ID 203). But this declaration does not directly rebut Defendant's testimony. Assuming, as the court must, that Saxton's declaration is true, the court must infer only that Saxton did not see the alleged violence, not that it did not occur. "One witness's testimony that he did not see something does not necessarily negate another witness's testimony that he did." *United States v. Boyajian,* No. 09-933(A)-CAS, 2014 WL 6750230. Nor does it necessarily create a genuine issue of material fact. *See Garcia v. La Revise Assoc. LLC,* No. 08-9356, 2011 WL 135009 (S.D.N.Y. Jan. 13, 2011) ("The evidence of the record also establishes that bartenders served customers directly; Plaintiffs' anecdotal evidence that they did not see the bartenders do so during their own work shifts is insufficient to raise a genuine issue of material fact as to bartender conduct."); *Veerkamp v. U.S. Security Assoc., Inc.,* No. 04-0049, 2006 WL 2850020 (S.D. Ind. Sept. 29, 2006) ("[P]laintiff's affidavits . . . stated only that they did not see such a notice at the sites they were guarding, which is not sufficient to present a genuine issue of material fact on this point.").

Plaintiff's reliance on the fact that Defendant made "no reference to Roth having kicked or spit on any EMTs" in the "written report that he prepared immediately after the incident" is similarly unavailing. (Dkt. # 16, Pg. ID 180.) The exclusion of a particular detail in a recorded recollection does not give rise to a reasonable inference that said detail did not occur. Even if it did, when viewed in its entirety, Defendant's report actually bolsters rather than detracts from Defendant's later testimony. While it does not specifically mention that Plaintiff kicked or spit on the paramedics, it does note that

7

Plaintiff "became hostile toward" the emergency responders—so much so that she "obstruct[ed]" them, "getting in the way of [Plaintiff] being treated." (Dkt. # 16-4, Pg. ID 205.)

Viewing all of this evidence in the light most favorable to the Plaintiff, the court concludes that Defendant's actions were objectively reasonable as a matter of law. There is no genuine issue of material fact about Plaintiff resisting the helping efforts of the responders, or whether she posed a threat to, among others, herself. She certainly did. Even assuming the contrary of the court's finding discussed below that the officer was acting in a medical response mode, and stipulating that the officer's conduct may have been in some measure related to a criminal activity inquiry, there is no dispute that the officer saw what he saw, and no dispute that the Plaintiff did what she did, departing twice from her position on the stretcher. A "reasonable officer could have believed it was reasonable" to take action and handcuff Plaintiff to her stretcher, in a way that resulted in no further injury to Plaintiff. That is all that is required to establish qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 660 (1987).

### 3. Clearly Established

Additionally, even if Defendant's actions were objectively unreasonable, he would still be entitled to qualified immunity because "a right to be free from unintentional conduct by medical-emergency responders under the Fourth Amendment is not clearly established." (Dkt. # 12, Pg. ID 68.) Defendant admits that "[w]hether an officer 'is entitled to qualified immunity depends on whether he or she acted in a law-enforcement capacity or in an emergency-medical-response capacity' when engaging in the allegedly unconstitutional conduct." (*Id.* (quoting *McKenna,* 617 F.3d at 439).) This is "an objective inquiry," *McKenna,* 617 F.3d at 440 (citing *Davis v. Scherer,* 468 U.S. 183,

8

191 (1984)), properly left to the jury because "the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury," *Id.* (quoting *Humphrey v. Mabry,* 482 F.3d 840, 846 (6th Cir. 2007)).

In *McKenna,* the Sixth Circuit held that, based on the evidence presented at trial, a reasonable jury could conclude that a police officer who responded to a medical emergency was operating in a law-enforcement capacity when he restrained and handcuffed a person suffering seizures. *Id.* The facts in the instant case are in some ways similar to the facts in dispute in *McKenna,* in which the plaintiff suffered a seizure in his home, prompting family members to call 911. *Id.* at 435. When defendant police officers arrived on the scene, they immediately inquired into the plaintiff's drug history and asked whether he had assaulted his daughter. *Id.* at 436. The court found that "alone, these questions would make for a very close case" but were "more consistent with law-enforcement behavior" in light of the fact that the officers subsequently "handled, subdued and handcuffed McKenna at the hands and feet." *Id.* at 444. After the incident, the officers ran a check on the plaintiff's license plate—tipping the scales further toward a finding of law enforcement investigation rather than medical concerns. *Id.* at 445.

Similarly, here Plaintiff has proffered evidence that calls into question Defendant's emergency-responder status. For example, in his deposition, Saxton offered his opinion that, upon seeing Plaintiff convulsing, Defendant "immediately assumed [she] was overdosing on drugs." (Dkt. # 16-2, Pg. ID 194.) Saxton also said that Defendant asked him if "[Plaintiff] ever had any drug problems before" and began "going through her prescriptions on her dresser." (*Id.*) Ralph Roth testified that

9

Defendant asked questions like "[i]s she on any drugs?" and "[a]re you sure she's not on any other pills?" (Dkt. # 16-1, Pg. ID 185.)

As the Sixth Circuit has observed, such questions can "make for a very close case," because questioning relatives about an individual's drug use can be "equally suggestive of an inquiry into the cause of [the individual's] medical condition and of an investigation into wrongdoing." *McKenna,* 617 F.3d at 444. In *McKenna,* the "close case" was made clearer in light of the officer asking the family members about the possibility that the plaintiff had committed an assault, and the fact that officers ran a check on the plaintiff's license plate: both actions of no apparent significance to a medical assessment but certainly relevant to a criminal misconduct inquiry. *Id.* at 436. As summary judgment requires all evidence to be construed in the light most favorable to the non-movant, the *McKenna* court could not conclude, as a matter of law, that the defendant officer was acting only in a medical emergency-responder capacity during the events in question, especially since he subsequently "handled, subdued, and handcuffed" Plaintiff.

Here the officer posed questions relevant only to Plaintiff's medications and drug ingestion, examined pill bottles (presumably prescription medications) but did not pose questions suggestive of criminal drug activity nor did he seem to be interested in anything that could suggest criminal conduct in any other way. Neither did he inquire about Plaintiff's license plate. If *McKenna*—with its various additional inquiries not present here—constituted the kind of "close case" that could not be decided as a matter of law, then this case, with its officer inquiries associated only with medications, is not "close." In addition, the subsequent actions of the officer in *McKenna*, "handl[ing],

subdu[ing], and handcuff[ing]" the Plaintiff, are for the most part absent here. There is no indication the Plaintiff was handled; she was not "subdued" in the sense of being wrestled to the ground. Once back on the stretcher she was merely handcuffed in place—in a way that all agree was non-injurious—and that appears to have been the end of the matter. Plaintiff's facts cannot establish that Defendant was acting in anything other than an emergency-medical-response capacity during the events in question here.

The court finds that Defendant's actions were objectively reasonable and that the right to be free from unintentional conduct by emergency medical responders was not clearly established at the time of the incident. Either finding, on its own, would be sufficient to demonstrate that Defendant is entitled to qualified immunity. The court will grant Defendant's Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment claims.

## B. Due Process Claim

In addition to her Fourth Amendment excessive force claim, Plaintiff also alleges that by handcuffing her, Defendant violated her Fourteenth Amendment rights "to not be punished without due process of law." (Dkt. # 1, Pg. ID 6.) But Defendant argues that "Plaintiff's claim for due process should be dismissed" because "the Supreme Court has determined that the . . . challenged application of force" should be analyzed under the Fourth Amendment, not the Fourteenth Amendment. (Dkt. # 12, Pg. ID 73 (bold and capitalization omitted).) The court agrees. "If a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."

11

*United States v. Lanier,* 520 U.S. 259, 272 n.7 (1997). Accordingly, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach" under the Fourteenth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989). The court, as noted, agrees with this aspect of Defendant's Motion.

### C. State Law Claims

Count III of Plaintiff's Complaint alleges assault and battery under Michigan law. (Dkt. # 1, Pg. ID 7-8.) The court however, declines to exercise its supplemental jurisdiction over this claim. A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g., Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

Once the court has exercised supplemental jurisdiction, it need not dismiss the state law claim merely because the federal claim failed. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952-53 (6th Cir. 2010). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel*, 625 F.3d at 952 (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)) (internal quotation marks omitted); *see* 28 U.S.C.

§ 1367(c)(3). The court must weigh the factors set forth in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), to determine whether to retain jurisdiction. *Gamel*, 625 F.3d at 951-52. Those factors are judicial economy, convenience, fairness, and comity. *Carnegie-Mellon*, 484 U.S. at 350; *Gamel*, 625 F.3d at 951-52.

True, § 1367(c)(3) and *Gamel* address what becomes of state law claims where all federal claims have been dismissed, while here the court has resolved to grant summary judgment on the federal claims. However, where, as here, the court has granted summary judgment on a pure question of law, and where the parties have not invested significant resources in discovery, the grant of summary judgment is indistinguishable from dismissal on the legal merits of the claim for the purposes of the supplemental jurisdiction analysis, with the exception that the extra effort expended on the matter by the time summary judgment is reached may tip the scales in favor of retaining jurisdiction in some cases. *See Carnegie-Mellon*, 484 U.S. at 350 ("[A] federal court should consider and weigh in each case, *and at every stage of the litigation*, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction . . . ." (emphasis added)).

But the scales are not so tipped here. Because Defendant's Motion was filed early in the course of litigation, judicial expenditures have been minimized. All three of the other factors—convenience, fairness, and comity—also weigh in favor of dismissal. Assault and battery claims invoke quintessentially state-law questions. It would therefore be more fair to the parties to have a state court resolve the matter, and comity obviously demands the same. There may be some inconvenience occasioned on the parties by having to pursue any claim or respond to any defense in yet another action, but that inconvenience is outweighed by the convenience afforded by litigating tort

13

actions in a state court more familiar with Michigan law. The state law claims must be dismissed.

## IV. CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment (Dkt. # 12) is GRANTED. The Motion is GRANTED with respect to Plaintiff's federal claims.

IT IS FURTHER ORDERED that Plaintiff's state-law claims are DISMISSED WITHOUT PREJUDICE.

      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: May 23, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 23, 2016, by electronic and/or ordinary mail.

      s/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522